IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:23-CR-03063-BCW-1 |
| ) | |
| KEVIN LONG, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Magistrate Judge David P. Rush's Report and Recommendations (Doc. #160) concerning Defendant's Motion to Dismiss Count 3 and Disqualify the Prosecuting AUSAs (Doc. #97).

On August 26, 2025, the grand jury issued a Superseding Indictment charging Defendant with Count 1, Murder in the First Degree under 18 U.S.C. § 1111; Count 2, Endangering the Welfare of a Child under 18 U.S.C. § 13 and Rev. Stat. Mo. § 568.045; Count 3, Sexual Exploitation of a Child under 18 U.S.C. § 2251(a) & (e); and Count 4, False Statement or Representation About a Matter within a Federal Agency's Jurisdiction under 18 U.S.C. § 1001(a)(2). (Doc. #84).

On September 15, 2025, Defendant filed a motion to dismiss Count 3 of the Superseding Indictment, the child sexual abuse material ("CSAM") charge, for vindictive prosecution. (Doc. #97). Defendant also argues the prosecuting attorneys should be disqualified from the case for vindictiveness and under the advocate-witness rule.

On December 12, 2025, Judge Rush filed the instant Report and Recommendations, recommending the Court deny Defendant's motion. (Doc. #160).

1

On December 19, 2025, Defendant filed objections to the Report and Recommendations. (Doc. #164). Defendant argues it was contrary to the evidence and law to conclude that Defendant has not shown a reasonable likelihood of vindictiveness. Defendant also argues testimony from the prosecutors is vital, exculpatory evidence that cannot be obtained from other sources.

The Court, after an independent review of the record and the applicable law, adopts the Magistrate's Report and Recommendations. For the reasons stated in the Report and Recommendations, Defendant's motion to dismiss Count 3 is denied. Accordingly, it is hereby

ORDERED that the Magistrate's Report and Recommendations (Doc. #160) be attached to and made part of this Order. It is further

ORDERED Defendant's Motion to Dismiss Count 3 and Disqualify the Prosecuting AUSAs (Doc. #97) is DENIED.

IT IS SO ORDERED.

Dated: December 23, 2025  /s/ Brian C. Wimes
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 23-03063-01-CR-S-BCW |
| | ) | |
| KEVIN LONG, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATIONS

Before the Court is Defendant's Motion to Dismiss Count 3 and Disqualify the Prosecuting AUSAs. (Doc. 97). This case has been referred to the undersigned to hear and process all pretrial motions to dismiss the indictment. Pursuant to Rule 12(b)(3)(A)(iv) of the Federal Rules of Criminal Procedure, Defendant moves to dismiss Count 3 as a vindictive prosecution and disqualify the prosecuting attorneys for acting out of vindictiveness. In the alternative, Defendant moves to disqualify the prosecuting attorneys, arguing they are witnesses. The Government filed Suggestions in Opposition and Defendant filed a Reply in Support. (Docs. 134, 144.) As follows, it is recommended that the relief requested by Defendant be denied.

**I.     Findings**

This case arises from the events surrounding the death of Jane Doe, a minor. On June 28, 2023, a grand jury returned an Indictment charging Defendant with two counts. (Doc. 1.) In Count 1, Defendant was charged with the murder of Jane Doe at the Fort Leonard Wood United States Army Military Installation on or about November 6, 2019, in violation of 18 U.S.C. § 1111. *Id*. In Count 2, Defendant was charged with making a false statement or representation

about a matter within a federal agency's jurisdiction in violation of 18 U.S.C. § 1001(a)(2). *Id*. On July 6, 2023, Defendant was arraigned, and the case was set for trial on August 21, 2023. (Docs. 13-14.)

On July 21, 2023, Defendant filed his first unopposed motion to continue the trial, stating that additional time was needed "to obtain and review the discovery, conduct legal research, conduct investigation, meet with the Defendant, and prepare for trial." (Doc. 17.) On July 24, 2023, the Court granted the motion and continued the trial from August 21, 2023, to January 8, 2024, as requested by Defendant. (Doc. 18.)

On August 28, 2023, in response to a request for discovery, AUSA Ami Miller told defense counsel Brian Risley that she would give him "the drives if you want to dump them. The only thing I would not copy [is] your client's phone dumps as there are nude images of [the victim] including close-ups of her vagina." (Doc. 97 at 10, doc. 134 at 2.) Over the next year, the Government provided extensive discovery to defense counsel, including the single image at issue in Count 3 approximately 55 times in various formats. (Doc. 97 at 10.) The single image was disclosed with a Bates-stamped identifier and was also included on the discovery index as "Photos of Injuries of [Jane Doe], provided by Long, 12 Nov 19." *Id*.

On November 20, 2023, Defendant filed his second unopposed motion to continue the trial, stating that additional time was needed to review the "extensive" discovery and prepare for trial. (Doc. 25.) On November 21, 2023, the Court granted the second motion and continued the trial from January 8, 2024, to July 8, 2024, as requested by Defendant. (Doc. 26.)

On April 29, 2024, Defendant filed an unopposed motion to declare the case complex and to continue the trial. (Doc. 28.) In support, Defendant stated that the case is unusual and complex due to the "voluminous discovery," and additional time was needed "to organize,

2

review, and analyze the government's discovery in order to effectively prepare for trial. Additionally, travel to interview potential witnesses may be necessary. Further, additional time is needed to conduct a thorough investigation and to retain and consult with necessary experts on critical medical and scientific matters." *Id*. at 2-3. On April 30, 2024, the Court entered an order declaring the case "unusual or complex" under the Speedy Trial Act and continuing the trial a third time, from July 8, 2024, to April 28, 2025, as requested by Defendant. (Doc. 29.)

In July 2024, the Government threatened to add a child sexual abuse material/child pornography charge if Defendant did not plead guilty. (Doc. 144 at 10.) On July 15, 2024, Mr. Risley emailed AUSA Miller to ask if he could come to the Government's office to inspect the alleged evidence in support of the child sexual abuse material/child pornography charge. (Doc. 144 at 8.)

On March 12, 2025, Defendant offered to resolve the case through a plea to involuntary manslaughter. (Doc. 144 at 11.) On March 17, 2025, AUSA Miller emailed to Mr. Risley the following: "Thank you for speaking to me about Mr. Long today. Just to make sure we are on the same page, if you are moving to continue, we will not supersede to add the sexual exploitation charge [and] if you are not moving to continue, I anticipate that a superseding indictment will be forthcoming in the early part of April." *Id.* (citing doc. 134-6 at 2.) The March 17, 2025, email continued with a discussion of plea conditions acceptable to the Government.

On March 20, 2025, Defendant filed a fourth motion to continue the trial from April 28, 2025, to September 15, 2025. (Doc. 48.) Defendant stated that additional time was needed "for the parties to engage in meaningful and substantive discussions on whether resolution short of trial is possible." *Id*. at 2. On March 25, 2025, the Court granted the motion and continued the

3

trial from April 28, 2025, to September 15, 2025, as requested by Defendant. (Doc. 49.) On April 10, 2025, Defendant filed a Motion to Review and Amend Detention. (Doc. 52.)

On July 3, 2025, AUSA Miller sent an email to defense counsel rejecting Defendant's offer to resolve the case through a plea to involuntary manslaughter. (Doc. 144 at 11, doc. 134-7 at 1.) AUSA Miller further stated in this email that if Defendant did not withdraw the pending Motion to Review and Amend Detention, then the Government would "move forward with charges this month" and ask the court to reopen the Motion to Review and Amend Detention to allow it to present the additional evidence related to the new charges. *Id*.

On August 26, 2025, by Superseding Indictment, a grand jury indicted Defendant with the original two counts and two new counts. (Doc. 84.) At issue is the newly charged Count 3, as follows:

> Beginning on an unknown date, but as early as October 30, 2019, said dates being approximate, in Pulaski County, in the Western District of Missouri, the defendant, KEVIN LONG, employed, used, persuaded, induced, and enticed, a minor, Jane Doe, to engage in sexually explicit conduct for the purpose of producing a visual depicting of such conduct, which visual depiction was produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce, all in violation of Title 18, United States Code, Sections 2251(a) and 2251(e).

*Id*. On August 28, 2025, Defendant was arraigned on the Superseding Indictment. (Doc. 86.) On August 29, 2025, the undersigned entered an order denying Defendant's Motion to Review and Amend Detention. (Doc. 89.) On September 8, 2025, the case was reset for trial on October 20, 2025. (Doc. 91.) On September 15, 2025, Defendant filed the motion at issue.

On September 19, 2025, Defendant filed a fifth motion to continue the four-to-five-week trial from October 20, 2025, to a special setting on February 9, 2026. (Doc. 100.) Defendant stated that the February 9, 2026, date was selected based on "the availability of the parties'

4

experts, of which there are at least nine." *Id*. On September 22, 2025, the Court granted the motion and continued the trial to February 9, 2026, as requested by Defendant. (Doc. 102.)

II. **Conclusions**

a. **Vindictive prosecution**

Federal Rule of Criminal Procedure 12(b)(3)(A)(iv) allows a defendant to file a pretrial motion to dismiss an indictment for "selective or vindictive prosecution." Although the government may punish a defendant for criminal conduct, it may not do so in retaliation for a defendant's exercise of valid legal rights, as this violates the Due Process Clause. *United States v. Goodwin,* 457 U.S. 368, 372 (1982); *United States v. Williams*, 793 F.3d 957, 963 (8th Cir. 2015); *United States v. Campbell*, 410 F.3d 456, 461 (8th Cir. 2005). To establish prosecutorial vindictiveness, a defendant must show (1) actual vindictiveness, or, in rare instances, may rely upon (2) a presumption of vindictiveness. *Campbell*, 410 F.3d at 461. Actual vindictiveness requires objective evidence that the prosecutor's decision was intended to punish the defendant for exercising a legal right. *Williams*, 793 F.3d at 963. A presumption of vindictiveness is established by evidence showing a realistic likelihood of vindictiveness considering "the prosecutor's actions in the context of the entire proceedings." *Williams*, 793 F.3d at 963 (citing *United States v. Chappell*, 779 F.3d 872, 880 (8th Cir. 2015)). "The defendant bears the heavy burden to show that the prosecution was vindictive, in light of the discretion prosecutors are given in performing their duties." *United States v. Robinson*, 809 F.3d 991, 1000 (8th Cir. 2016) "In the absence of clear evidence to the contrary, courts presume that prosecutors have properly discharged their official duties." *Chappell*, 779 F.3d at 880 (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)).

5

Here, Defendant argues "the prosecutors added Count 3 out of vindictiveness," claiming they "do not have a good faith belief that [Defendant] actually committed the act charged in Count 3." (Doc. 97 at 5.) According to Defendant, the Government added Count 3 in retaliation after "realizing that [he] planned to fight the murder charge at trial." *Id*. at 10. As Defendant has not produced or alleged any direct evidence of vindictiveness, he attempts to rely on a presumption of vindictiveness. As follows, however, Defendant has not shown a reasonable likelihood of vindictiveness and as a result, the rare instance of a presumption of vindictiveness does not apply.

Defendant claims the historical context of the case demonstrates the Government's vindictiveness. First, he argues the new charge is not the result of new information as it is based on information the Government has had since 2019. Defendant cites *Chappell*, 779 F.3d at 881, and *United States v. Wood*, 36 F.3d 945, 947 (10th Cir. 1994), for the premise that a lack of changed circumstances can be evidence of vindictiveness. However, unlike in the present case, where the charging decision was made pre-trial, in both *Chappell* and *Wood*, the prosecutor decided to pursue additional charges on remand after a trial and appeal. See *Wood*, 36 F.3d at 946 (citing *Goodwin,* 457 U.S. at 381) ("A change in a charging decision made after an initial trial, as was the charging decision in this case, is much more likely to be improperly motivated than is a pre-trial decision.").

Furthermore, nearly fifty years ago, the Supreme Court held that a prosecutor may legitimately threaten to bring additional charges to induce a defendant into pleading guilty, even though the additional charges, if brought, might appear to penalize a defendant for exercising their right to trial. *Bordenkircher v. Hayes,* 434 U.S. 357, 363–65 (1978). Because plea bargaining offers a "mutuality of advantage to defendants and prosecutors," *id.* at 363, and

6

because a prosecutor's ability to threaten a reluctant defendant with additional charges is a necessary feature of a robust plea bargaining process, additional charges resulting from a breakdown of the plea bargaining process are not deemed vindictive, regardless of the fact that the prosecutor's goal is "to persuade the defendant to forgo his constitutional right to stand trial." *Goodwin,* 457 U.S. 368, 378; *see id.* at 378 n. 10.

Here, an additional charge was brought against Defendant after the breakdown of plea negotiations and before trial, a legitimate, non-vindictive act, as follows.

- On June 28, 2023, a grand jury returned the original indictment,
- During the next year, Defendant reviewed the discovery and conducted research and investigation as stated in his first three motions for continuance,
- In July 2024, the Government threatened to add a child sexual abuse material/child pornography charge if Defendant did not plead guilty,
- On March 12, 2025, Defendant offered to resolve the case through a plea to involuntary manslaughter,
- On March 20, 2025, Defendant filed a fourth motion to continue the trial to allow "the parties to engage in meaningful and substantive discussions on whether resolution short of trial is possible,"
- On July 3, 2025, the Government rejected Defendant's offer to resolve the case through a plea to involuntary manslaughter, and
- On August 26, 2025, a grand jury returned the superseding indictment, adding the child pornography charge.

Defendant "does not dispute that the Government has been threatening to bring such a charge since mid-2023" and agrees that "the Government repeatedly threatened to supersede with Count 3 – as early as mid-2024." (Doc. 144 at 4, 11.)

Defendant's citation to *United States v. LaDeau*, 734 F.3d 561 (6th Cir. 2013) is also unavailing. In *LeDeau*, the prosecutor brought an additional charge after the defendant's motion to suppress was granted and the original charge was dismissed. *Id*. at 568. This scenario is not what happened in the present case, where the additional charge was brought after plea negotiations broke down. Under these circumstances, the fact that the new charge is based on information the Government has had since 2019 does not show a reasonable likelihood of

7

vindictiveness. See *Goodwin*, 457 U.S. at 381 (when the initial charging decision is made, "the prosecutor's assessment of the proper extent of prosecution may not have crystallized.").

Second, Defendant argues the timing of the Superseding Indictment indicates vindictiveness. (Doc. 97 at 15.) Although it is true that the Superseding Indictment was returned less than three weeks before trial was set to begin, "timing alone is insufficient to trigger the presumption of vindictiveness." *Williams*, 793 F.3d at 965. And Defendant's citation to *United States v. Jenkins*, 504 F.3d 694 (9th Cir. 2007) is not helpful. In *Jenkins*, the Government brought an additional charge *during trial* while the jury was deliberating and after the defendant presented a reasonable credible defense to the charge being tried. *Id*. at 700. Here, the Government warned Defendant in July 2024 that failure to reach a plea agreement would result in a superseding charge, then followed through on that threat after plea negotiations broke down in July 2025, which is a legitimate, non-vindictive part of plea-bargaining under *Bordenkircher* and *Goodwin*. Accordingly, the timing, while close to trial, does not support the finding of a reasonable likelihood of vindictiveness.

Third, Defendant contends "the sexual exploitation charge is based on weak evidence at best." (Doc. 97 at 16.) In support, he purports that he "alerted investigators to the image at issue and voluntarily provided it to investigators" and the "investigators did not consider the image to be child sexual abuse material and did not treat it as such." *Id*. at 7-8. Defendant also claims the Government has provided no evidence the image was lascivious or intended to elicit a sexual response in the viewer. However, Defendant proceeds pursuant to Rule 12(b)(3)(A)(iv), which allows pretrial motions "if the motion can be determined without a trial on the merits." See *United States v. Nabors*, 45 F.3d 238, 240 (8th Cir. 1995) (There is no summary judgment procedure in criminal cases, nor do the rules provide for a pre-trial determination of the

sufficiency of the evidence). Defendant's assertions regarding his actions and the actions of investigators in 2019 may be relevant to his defense to the charge at trial, but they are not relevant to Defendant's primary argument that the prosecutors do not have a good faith belief that he committed the act charged in Count 3. Nor is the Government required to explain their theory of the case to Defendant before trial. *Id*. Accordingly, the undersigned will not consider these allegations, as they are matters for trial.

In further support of his contention that the sexual exploitation charge is based on weak evidence at best, Defendant alleges that the prosecutors did not present the image at issue to the grand jury or mention it during the original arraignment, then disclosed the image at issue 55 times to defense counsel during discovery but did not claw back the image promptly after they were informed. Even accepting these allegations as true, when viewing the full context of the case, Defendant's contention that the charge is based on weak evidence is belied by other uncontroverted actions of the prosecutors. Specifically, "the Government repeatedly threatened to supersede with Count 3 – as early as mid-2024." (Doc. 144 at 11.) Then, after plea negotiations broke down in July 2025, the Government did what it had threatened to do: it presented the matter to a grand jury, which found probable cause and indicted Defendant on Count 3. See *Branzburg v. Hayes*, 408 U.S. 665, 686-687 (1972) ("ancient role of the grand jury is that it has the dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens from unfounded criminal prosecutions"). Accordingly, upon review of the full context of the case, Defendant's contention that the sexual exploitation charge is based on weak evidence is unfounded.

Fourth, Defendant maintains the new charge is not a more severe charge, but instead is brought to "scare, embarrass, stigmatize, and shame him." (Doc. 97 at 18.) He argues that he

9

Case 6:23-cr-03016-BCW    Document 176    Filed 12/23/25    Page 11 of 15

was already charged with first-degree murder in Count 1, and if convicted of that charge he will be sentenced to life imprisonment without the possibility of release. Thus, he asserts that a conviction under Count 3 would not actually add any time to his sentence. In response, the Government argues that if Defendant is convicted of first-degree murder, he may seek an instruction on the lesser-included offense of involuntary manslaughter, which provides a maximum sentence of 8 years. As a result, Count 3, which carries a range of 15-to-30-years imprisonment, may ultimately be a more severe charge than Count 1. Under these circumstances, the undersigned does not find that this factor supports a reasonable likelihood of vindictiveness.

In summary, Defendant has not met his heavy burden of showing clear evidence that a reasonable likelihood of vindictiveness exists sufficient to invoke a presumption. Defendant argues that the absence of newly discovered evidence, the timing of the new charge, the allegedly weak supporting evidence, and the lesser penalty of the new charge demonstrate that the prosecutors do not believe Defendant committed an offense related to child pornography. However, when considering the full record, primarily the uncontroverted facts that at least one year before plea negotiations ended unsuccessfully, the Government advised that it would bring the additional charge if Defendant did not plead guilty and that the grand jury found probable cause and indicted him, Defendant has failed to show that the prosecutors "do not have a good faith belief that [he] actually committed the act charged in Count 3." See *Bordenkircher*, 434 U.S. at 363–64 (So long as probable cause supports the charges and there is no evidence of retaliation, the government may escalate charges following a rejected plea offer). As a result, there is no due process violation and Defendant's motion to dismiss for vindictive prosecution should be denied.

Additionally, because Defendant has failed to demonstrate any prosecutorial vindictiveness, his request to disqualify the prosecutors for acting out of vindictiveness should also be denied.

Defendant also requests discovery and an evidentiary hearing on the Government's prosecutorial decision making, arguing "these materials are likely to confirm the vindictiveness of the prosecution and the Government's lack of objectivity and good faith." (Doc. 97 at 22.) To merit further discovery or an evidentiary hearing on a vindictive prosecution claim, a defendant must allege sufficient facts to take the question past the frivolous state and raise reasonable doubt as to the prosecutor's purpose. *United States v. Aanerud*, 893 F.2d 956, 960-61 (8th Cir. 1990). By failing to show a reasonable likelihood of vindictiveness exists, Defendant has failed to make a threshold showing of a vindictive prosecution claim. Therefore, the undersigned declines to grant Defendant's requests for discovery and an evidentiary hearing.

### b. Disqualification of prosecutors as interested witnesses

In the alternative, Defendant argues that if Count 3 survives, then "the prosecutors must be disqualified from trying this case as they are necessary witnesses to [his] defense of Count 3." (Doc. 97 at 20.) Defendant relies on the advocate-witness rule, which "prohibits an attorney from appearing as both a witness and an advocate in the same litigation." *United States v. Prantil*, 764 F.2d 548, 552-53 (9th Cir. 1985). He claims the prosecutors' "cavalier treatment of the purported evidence proves it is not child sexual abuse material." (Doc. 97 at 20.) Thus, according to Defendant, he needs their testimony as to how they characterized, maintained, and distributed the image at issue to defense counsel.

"[A] trial court has wide discretion respecting examination of witnesses ... [and] may, without abusing its discretion, refuse to allow the defense to call as a witness the United States

11

Attorney trying the case." *Gajewski v. United States*, 321 F.2d 261, 268 (8th Cir. 1963). Requests for such testimony are disfavored, and "the party seeking such testimony must demonstrate that the evidence is vital to his case, and that his inability to present the same or similar facts from another source creates a compelling need for the testimony." *United States v. Watson,* 952 F.2d 982, 986 (8th Cir.1991) (citing *Gajewski*, 321 F.2d at 269; *Prantil*, 764 F.2d at 551).

Here, the prosecutors' testimony is not vital evidence. Unlike in *Prantil*, neither AUSA Miller nor AUSA Eggert are witnesses to or participants in any of the events alleged in Count 3. Notably, Defendant claims the Government "has provided no evidence that the image was lascivious or intended to elicit a sexual response in the viewer [and] there is no circumstantial evidence in the thousands of pages of discovery that supports the image being more than mere nudity." (Doc. 97 at 17.) Under these circumstances, the prosecutors' handling of the image at issue does not appear to be vital to a jury's determination as to whether the image depicts sexually explicit conduct.

Nor will Defendant be unable to present similar facts regarding the Government's allegedly cavalier treatment of the evidence. As Defendant himself states, he will be able to elicit "testimony from Agent Diemler and others who investigated the case about their investigation" at trial. (Doc. 144 at 12.) Thus, Defendant will be able to present similar facts as to the handling of the evidence from another source.

Accordingly, the motion to disqualify the prosecutors as interested witnesses should be denied.

### III. Recommendations

Based on the foregoing, the relief requested by Defendant in his Motion to Dismiss Count 3 and Disqualify the Prosecuting AUSAs should be denied.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: December 12, 2025